IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW TIMOTHY,<br><br>Defendant. | **4:23CR3059**<br><br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Matthew Timothy's motion to suppress, Filing No. 42, and oral motion for a *Franks* hearing. Timothy seeks to suppress evidence seized pursuant to two warrants. Timothy moves for a *Franks* hearing on one of the warrants. Timothy also moves to suppress statements he made to law enforcement on three separate occasions for alleged violations of his Fifth Amendment *Miranda* rights, his Sixth Amendment right to counsel, and as derivative evidence under the Fourth Amendment. The Court held a hearing on Timothy's motion to suppress on September 18, 2024. It ordered a transcript of the hearing and deemed the matter submitted upon receipt of the transcript. A transcript of the proceedings has been filed and the matter is now ripe for disposition.

For the reasons discussed below, the undersigned recommends Timothy's motion to suppress and motion for a *Franks* hearing should be denied.

## STATEMENT OF FACTS

Timothy is charged with one count of knowingly receiving and one count of knowingly possessing child pornography. Filing No. 1. The statements and warrants Timothy challenge pertain to an investigation by the Falls City Police Department and a

separate investigation by the Nebraska State Patrol ("NSP"). The undersigned finds the following facts are credible.

**Falls City Investigation.**

On July 29, 2022, Timothy called the Falls City Police Department. Filing No. 52-1. Timothy reported a woman was allowing her two minor daughters to use illegal drugs. Filing No. 68 at 26:4–10. Two officers spoke to the woman and learned Timothy messaged the woman via Facebook Messenger asking for money to reimburse him for buying her minor daughters narcotics. Filing No. 68 at 27:13–18. The minor daughters reported they consumed alcohol and marijuana at Timothy's apartment and told the officers Timothy asked them sexual questions. Filing No. 68 at 28:10–22. While the officers were speaking to the woman and her daughters, Timothy called the police department again for an update on the investigation. First *see* Filing No. 68 at 30:11–18; and then *see* Filing No. 52-1.

After speaking with the woman and her daughters, the officers spoke with Timothy in the hallway outside his apartment door for approximately ten minutes. Filing No. 68 at 32:20–23, 34:14–17. Timothy made several statements in response to the officers' questions. Filing No. 68 at 31:16–32:6, 34:22–25. Once the officers started questioning Timothy about providing the girls marijuana and alcohol, he stated, "I am going to jail now, am I?" and refused to respond to any additional questioning. Filing No. 68 at 35:1–12. The officers did not arrest Timothy or tell him he was under arrest or going to jail. Filing No. 68 at 33:3–5, 35:10–19. After Timothy stopped answering questions, the officers left and drove back to the Falls City Police Department to speak with the woman and her daughters again.

While the officers were speaking with the woman and her daughters, Timothy called the police department a third time because he wanted to provide additional information. Filing No. 52-1; Filing No. 68 at 43:9–19. After the officers finished speaking to the woman and her daughters, the officers returned to Timothy's apartment to arrest him. Filing No. 68 at 44:2–7. This time, the officers told Timothy why he was under arrest and seized his cell phone from his pocket. Filing No. 68 at 44:19–45:7. The officers did

not ask Timothy any questions until after he arrived at the police station and the officers read him the *Miranda* warnings. Filing No. 68 at 46:14–18, 47:2–21.

The second interview lasted approximately fifty minutes. Filing No. 68 at 48:7–8. Timothy signed a form waiving his *Miranda* rights before the officers started questioning him. Filing No. 68 at 49:15–50:7. Timothy then answered the officers' questions and made various statements. Filing No. 68 at 52:6–1. The interview ended when Timothy asked for an attorney. The officers did not ask any additional questions after Timothy asked for an attorney and transported him to the local jail. Filing No. 68 at 53:10–22, 78:10–21. Both Falls City interviews occurred on July 29, 2022.

The officers subsequently executed two search warrants. The first warrant authorized a search of the phone seized from Timothy's person. *See* Filing No. 52-6. Timothy is not challenging the first warrant. Filing No. 68 at 59:17–24. The second warrant authorized a search of Timothy's apartment to seize all computer system(s), including all hard drives, external storage devices, and other electronic devices. Filing No. 52-7.

The officer attested in the probable cause affidavit that Timothy asked for reimbursement on Facebook Messenger from a woman for purchasing alcohol and marijuana for her minor daughters, communicated with the minor daughters using Snapchat, agreed to provide alcohol and marijuana to the minor daughters via Snapchat and Facebook Messenger, and sent photos of his penis to underage girls via Snapchat. The officer attested he believed these facts were sufficient to establish probable cause Timothy committed the following crimes: child abuse, distributing a controlled substance to a minor, procuring/selling alcohol to a minor/incompetent, and contributing to the delinquency of a child. Filing No. 52-7.

Timothy was eventually charged in Nebraska state court with two counts of delivering, dispensing, distributing, manufacturing, or possessing a controlled substance to a minor, two counts of contributing to the delinquency of a child, and two counts of procuring and/or selling alcohol to a minor or incompetent person. Timothy first appeared on the state court charges in August 2022. The Falls City Police Department stored the seized external storage devices while Timothy's state court prosecution was pending. Filing No. 68 at 68:24–69:19.

3

**NSP Investigation.**

Around the same time as the Falls City Police Department investigation, a NSP investigator flagged an IP address in Nebraska "advertising" (making available) child pornography. Filing No. 68 at 96:16–97:3. The investigator subpoenaed the internet provider and learned the IP address was associated with Timothy's account. Filing No. 68 at 98:22–99:25. He began preparing a residential search warrant to search the service address associated with the account (Timothy's apartment) but cancelled this warrant when he learned the devices had already been seized by Falls City. Filing No. 68 at 99:15–25, 100:6–15, 108:16–109:1. Instead, the investigator sought and obtained a warrant to search, in relevant part, a Skytech Gaming computer tower and external storage devices seized from Timothy's apartment and in the custody of the Falls City Police Department. *See* Filing No. 52-9. The search revealed evidence of child pornography on the Skytech computer and an external hard drive. Filing No. 52-10.

The investigator then visited Timothy's apartment on February 27, 2023, to "put somebody behind the keyboard." Filing No. 68 at 114:13–115:1. Two NSP investigators, in plain clothes, knocked on Timothy's apartment door and identified themselves as law enforcement. Filing No. 68 at 115:2–23. The investigators asked to come inside to ask questions about the child pornography investigation. Exhibit 12 at 5:49–6:05; *see also* Filing No. 68 at 135:14–19 (investigator testified the state court case was unrelated to his investigation). Timothy agreed, the investigators walked in, and all three sat in Timothy's living room. Filing No. 68 at 118:18–25. One of the investigators told Timothy he was not under arrest and did not handcuff him. Exhibit 12 at 6:05–6:20; Filing No. 68 at 119:19–120:1. This investigator testified his intent was not to arrest Timothy at the beginning of the interview because he did not know if Timothy or an unknown third party was responsible for the child pornography found on the devices. Filing No. 68 at 123:19–24; *see also* Filing No. 68 at 124:2–5. Timothy made several statements in response to the investigators' questions.

The investigators did not *Mirandize* Timothy until the end of the interview. Exhibit 12 at 15:20–15:58. After providing the *Miranda* warnings, one investigator asked, "Would you like to answer any more questions?" Timothy responded, "I can, if you want to ask

4

questions." Exhibit 12 at 15:50–16:00; Filing No. 68 at 134:25–135.3. Timothy then continued responding to the investigators' questions. Approximately two minutes after *Mirandizing* Timothy, the investigators arrested him, *see* Filing No. 68 at 119:24–120:1; Exhibit 12 at 17:30–17:48 (sound of placing Timothy in handcuffs), and transported him to jail. Timothy was charged in federal court with one count of possessing and one count of receiving child pornography. He was indicted on May 16, 2023.

## ANALYSIS

The undersigned clarified the scope of Timothy's motion during a colloquy with defense counsel at the motion to suppress hearing. *See* Filing No. 68 at 4:14–12:15; *see also* Filing No. 68 at 138:5–139:10. Timothy challenges the Falls City warrant and the NSP warrant and requests a *Franks* hearing on the NSP warrant. Filing No. 68 at 87:21–93:19 (oral motion for *Franks* hearing). Timothy also argues the questioning (1) by Falls City police officers at his apartment, (2) after he was arrested at the Falls City police station, and (3) by NSP investigators at his apartment violate his Fifth Amendment *Miranda* rights, his Sixth Amendment right to counsel, and his Fourth Amendment rights as derivative evidence of the Falls City and/or NSP warrants.[1]

### I.    Warrants.

Timothy challenges the second Falls City warrant issued July 31, 2022, Filing No. 52-7, and the NSP warrant—Filing No. 52-9. Timothy is not challenging the first Falls City warrant. Filing No. 52-6. For the reasons set forth below, the undersigned recommends the Court deny Timothy's motion to suppress the evidence seized and searched pursuant to these warrants.

### a.  *Falls City Warrant.*

Timothy argues the second Falls City warrant is overly broad because it exceeds the scope of probable cause established by the affidavit. Though unclear from his brief and arguments at the suppression hearing, Timothy also appears to generally argue the Falls City warrant lacks particularity. This argument seemingly relates to the alleged

---

[1]  The undersigned finds Timothy waived any issues he failed to substantively brief or address at the hearing. *See* NECrimR. 12.3(b)(1).

overbreadth of the warrant, not whether the categories of items sought in the warrant were sufficiently described in the warrant.

As set forth below, the undersigned need not determine whether the warrant is overly broad or lacks particularity because the *Leon* good faith exception applies. *See United States v. Ali*, No. 8:22CR129, 2023 WL 9067597, at *7 (D. Neb. Oct. 30, 2023), *adopted by* 2023 WL 8447018 (D. Neb. Dec. 6, 2023) (evidence seized is still admissible under *Leon* "[e]ven if the warrant was not supported by probable cause, or was overly broad or insufficiently particular"). The undersigned nonetheless addresses Timothy's breadth argument, primarily because this analysis aids in determining the applicability of the good faith exception.

i. ***Probable Cause to Support the Scope of the Warrant.***

The scope of a warrant must be supported by probable cause "to believe that the evidence sought will aid in a particular apprehension or conviction." *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967)). The decision of whether probable cause exists to issue a search warrant is "based upon a common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quotation omitted). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal quotations omitted).

"After a judge has issued a search warrant upon a finding of probable cause, that finding deserves great deference." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotation omitted). The Court "should uphold the decision to issue the warrant so long as it is supported by substantial evidence in the record." *United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005). When the issuing judge relied on an affidavit to find probable cause, the four corners of the affidavit must establish the nexus between the item to be seized and the criminal conduct. *See Saddler*, 19 F.4th at 1039 (first quoting *Warden*, 387 U.S. at 307; and then quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). The issuing judge may "draw reasonable inferences from the totality of

the circumstances in determining whether probable cause exists to issue [the] warrant . . . ." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017).

The officer attested in the probable cause affidavit that he believed the facts provided probable cause for the following crimes: child abuse, distributing a controlled substance to a minor, procuring/selling alcohol to a minor/incompetent, and contributing to the delinquency of a child. Timothy does not dispute the affidavit provided probable cause to issue a warrant to search his cell phone. He argues the affidavit did not provide probable cause to seize his computer because the affidavit did not indicate Timothy was using his computer to communicate with minors. He also argues the affidavit did not provide probable cause to seize electronic storage devices because these devices cannot independently communicate like a cell phone. Considering the reasonable inferences the issuing judge could draw from the totality of the circumstances, the undersigned finds the issuing judge's decision that the affidavit provided probable cause to seize and search his computer and electronic storage devices is supported by substantial evidence in the record.

Specifically, the probable cause affidavit attests Timothy used Snapchat and/or Facebook Messenger to (1) ask for reimbursement for purchasing alcohol and marijuana for minors, (2) to agree to buy minors alcohol and marijuana, and (3) to send photos of his penis to minors. These communications Timothy had with minors included videos and photographs. Given the totality of the circumstances and allegations in the affidavit—including the fact that Timothy had sexual conversations with minors—the issuing judge could reasonably infer that Timothy may have stored the communications, videos, and photographs related to the crimes at issue. It was also reasonable to infer Timothy may have used a computer to use the social media applications at issue. All the devices the warrant authorized the officer to seize are either capable of hosting Snapchat and Facebook Messenger communications (like a computer) or capable of storing Snapchat and Facebook Messenger communications sent on another device (like an external storage drive). There is substantial evidence in the record to support the issuing judge's finding that there was probable cause the computer and storage devices would contain evidence related to the crimes at issue. *Cf. United States v. Alexander*, 574 F.3d 484, 489–90 (8th Cir. 2009) (warrant authorizing seizure of computer not overly broad

because, even though there was no evidence the computer was used to create the illicit recordings at issue, there was still a fair inference illicit recordings "would be found stored on digital devices, including the computer . . .").

Accordingly, considering the totality of the circumstances, the undersigned finds the Court should uphold the warrant's inclusion of Timothy's computer and electronic storage devices. Even if the affidavit did not provide probable cause to seize these devices, however, the undersigned still recommends the Court deny Timothy's motion to suppress the devices pursuant to the good faith exception.

ii. ***Good Faith Exception.***

"Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *Proell*, 485 F.3d at 430. The Court determines if the exception applies by assessing "the totality of the circumstances, including information known to the officer but not presented to the issuing judge." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (quoting citation omitted).

The good faith exception is not applicable in four circumstances: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned [their] judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

**First Circumstance—No *Franks* Violation.**

First, the good faith exception is not applicable in the first circumstance when there is a *Franks* violation. *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006); ***see also*** *United States v. Conant*, 799 F.3d 1195, 1200 n.1 (8th Cir. 2015) (citing *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)) (a *Franks* violation is not excused by the

good faith exception). A defendant is not entitled to a hearing on whether there is a *Franks* violation unless the defendant "make[s] a substantial preliminary showing that the affiant included in the warrant affidavit a false statement knowingly and intentionally, or with reckless disregard for the truth, and the affidavit's remaining content is insufficient to establish probable cause." *United States v. Johnson*, No. 8:20CR165, 2022 WL 1065445, at *4 (D. Neb. Mar. 2, 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

"*Franks* does not apply to negligent misrepresentations." *Conant*, 799 F.3d at 1201 (quoting *United States v. Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003)). The "defendant must show more than negligence or an innocent mistake." *United States v. Finley*, 612 F.3d 998, 1002 (8th Cir. 2010) (citations omitted). A false statement is made in reckless disregard for the truth when, "viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of [their] statements or had obvious reasons to doubt the accuracy of the information [they] reported." *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

Timothy argues (in effect) the officer violated *Franks* by attesting Snapchat and Facebook Messenger conversations occurred via Timothy's phone "and[/]or" computer. Timothy specifically challenges the following statement:

> Mr. Timothy stated he has been communicating with [two minor girls] through social media applications such as Facebook Messenger and Snapchat applications on his cellular phone and or computer(s).

Filing No. 52-7 at 2. Timothy argues this is a false statement made knowingly and intentionally or reckless disregard for the truth because the same officer previously attested in his affidavit to obtain the first Falls City warrant these same conversations occurred solely via Timothy's phone. *See* Filing No. 52-6 at 6.

The statement Timothy communicated using his phone "and[/]or" his computer is, at most, a negligent misrepresentation. First, it is possible to use Snapchat and Facebook Messenger on a computer. Second, the statement at issue is written in the alternative, encompassing the possibility Timothy communicated using only his phone. At most, the inclusion of "and[/]or" is a minor discrepancy and minor discrepancies in the wording of an officer's statement do not rise to the level of a *Franks* violation. *Coleman*, 349 F.3d at

1084 (no *Franks* violation when the defendant's license plate in the affidavit was off by one letter, the affidavit misidentified the witness who provided the license plate number, and the affidavit indicated there were "FBI sources"—plural—even though there was only one source).

Timothy is not entitled to a hearing on this issue[2] because, he (1) failed to make a substantial preliminary showing that the inclusion of the phrase "and[/]or" his computer is more than a negligent misrepresentation and (2) probable cause remains to issue the warrant even if the challenged phrase is stricken because, as discussed above, there is probable cause to seize devices solely capable of storing communications and the social media applications at issue can be used on a computer. Given the analysis set forth herein, the first circumstance in which the good faith exception is not applicable is not present and the undersigned turns to the remaining three circumstances.

### Remaining Three Circumstances.

Second, there is no evidence the issuing judge wholly abandoned her judicial role in issuing the warrant. Notably, the officer testified the approval process was consistent with standard procedure. *See* Filing No. 68 at 22:16–23:17, 63:11–25.

Third, for the reasons discussed above, the affidavit is <u>not</u> so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The officer's reasonable belief in the existence of probable cause is bolstered by the fact that both his sergeant and the county attorney reviewed the affidavit before it was sent to the judge. Filing No. 68 at 22:19–23:17, 62:20–63:10; *see United States v. Perry*, 531 F.3d 662, 666 n.6 (8th Cir. 2008) (collecting cases) (another factor adding to the reasonableness of officer's "belief that the affidavit was not so lacking in probable cause was the county prosecutor's determination that the affidavit provided probable cause for the search").

Fourth, the attesting officer spoke to witnesses and saw corroborating evidence indicating Timothy was using Snapchat and Facebook Messenger to offer to purchase alcohol and marijuana for minors. *See* Filing No. 68 at 27:13–23. One of the minors also

---

[2] The Court notes Timothy did not move for a *Franks* hearing on this issue.

told the officer Timothy was sending sexual photos to other underage girls via Snapchat. The officer included these details in his probable cause affidavit. *See* Filing No. 52-7. The warrant is temporally limited to a few months prior to the minors first reporting these messages to law enforcement. It authorizes Falls City officers to seize and search computer systems, hard drives, external storage drives, and other electronic devices. Based upon these facts, the warrant is <u>not</u> so facially deficient that <u>no</u> police officer could reasonably presume the warrant to be valid.

For the reasons set forth herein, under the totality of the circumstances, it was objectively reasonable for the executing officer to rely on the Falls City warrant. Thus, the good faith exception applies, and the Court should not suppress evidence seized pursuant to this warrant.

### b. *NSP Warrant.*

Timothy argues the Court should suppress the evidence found on the devices because NSP would not have been able to search the devices but for the seizure of the devices pursuant to the Falls City warrant Timothy challenges. Timothy also moves for a *Franks* hearing on the NSP warrant. The undersigned addresses Timothy's oral motion for a *Franks* hearing first.

### i. **Franks** *Hearing.*

As discussed above, pursuant to *Franks v. Delaware*, a defendant is allowed a hearing when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included [or excluded] by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. A defendant cannot prevail on a *Franks* challenge if the warrant affidavit continues to establish probable cause after the challenged offensive portions of the affidavit are excluded and any additional alleged facts are included. *U.S. v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005).

During the motion to suppress hearing, Timothy orally moved for a *Franks* hearing on the following paragraph in the probable cause affidavit:

Investigator Davis made contact with the Falls City Police Department in regards to an arrest of Matthew Timothy on 07-29-2022. Officer Ramirez of the Falls City Police Department told Investigator Davis that he arrested Matthew Timothy on 07-29-2022, for possession with intent to deliver, contributing to the delinquency of a minor and procuring alcohol to a minor. Officer Ramirez stated their case was involving Timothy providing alcohol and drugs to female children approximately 15 years in age. Officer Ramirez also said that Timothy was having sexual conversations over social media with the females.

Filing No. 52-9 at 9. Timothy asserts the last sentence attesting Officer Ramirez told the affiant that Timothy was having sexual conversations with minors over social media is false. Even if this statement is stricken, however, there is still probable cause to issue the warrant because the affidavit attests an IP address leased to Timothy was making available child pornography. The Court should deny Timothy's oral motion for a *Franks* hearing.

## ii. *Independent-Source and Inevitable-Discovery Doctrines.*

Timothy also argues NSP would not have been able to search the devices but for the Falls City warrant. As set forth above, the Court should not suppress evidence seized pursuant to the Falls City warrant. Accordingly, Defendant's argument fails. However, even if the Court were to uphold Timothy's constitutional challenge to the Falls City warrant, evidence obtained pursuant to the NSP warrant is still admissible for the reasons set forth herein.

"The independent-source doctrine applies if the evidence both would have been acquired by lawful means had the unlawful search not occurred and in fact was acquired (or reacquired) by these lawful means. The inevitable-discovery doctrine, on the other hand, applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact was not acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). This circuit has explicitly indicated the distinction between these two doctrines is "not sharp" and "where exactly one draws the line between the two doctrines is unimportant." *Id.* Given the fact scenario at hand, the applicability of these doctrines is not clear-cut. The relevant principle of both

doctrines is that, although "the government should not profit from its illegal activity," it should also not be "placed in a worse position than it would otherwise have occupied." *Id.*

To determine if evidence within the scope of a valid warrant would have been acquired but for the unlawful search, the Court looks to "whether (1) law enforcement 'would have sought a warrant even if the [unlawful] search had not occurred,' and (2) 'the warrant was supported by probable cause even without information gained from the [unlawful] search.'" *Id.* (quoting *United States v. Anguiano*, 934 F.3d 871, 874 (8th Cir. 2019)). The question in this case is whether NSP would have obtained a warrant to search Timothy's residence even if the Falls City warrant was not executed. *See United States v. Lazzaro*, 637 F. Supp. 3d 640, 645 (D. Minn. 2022).

First, as set forth above, the computer and external storage devices were lawfully seized pursuant to the Falls City warrant. The NSP investigator testified he cancelled the residential search warrant he was preparing for Timothy's apartment when he discovered "all of the devices had been seized already." Filing No. 68 at 108:16–109:1. Accordingly, even assuming the search of Timothy's apartment and subsequent seizure of the devices was unlawful pursuant to the second Falls City warrant, the undersigned finds NSP would have still sought a warrant to search Timothy's apartment and seize these devices.

Second, the affidavit does not reference or rely on any information gleaned from a search of devices seized from Timothy's apartment pursuant to the Falls City warrant. The only references to the Falls City warrant in the affidavit: (1) pertain to the Falls City investigation regarding crimes not related to child pornography and (2) explain why the devices the NSP warrant sought to search were in Falls City custody. Once again, there is probable cause to search the devices because the NSP investigator attests in the affidavit that an IP address leased to Timothy was making available child pornography. The service address for the IP address is Timothy's apartment. These facts provide sufficient probable cause to search Timothy's apartment and seize the devices independent of the Falls City warrant. Accordingly, any evidence obtained from the devices searched pursuant to the NSP warrant is admissible under the independent-source doctrine and/or the inevitable-discovery doctrine.

13

Given the fact that the residential search warrant was not ultimately obtained, the inevitable-discovery doctrine is more applicable in the case at hand. Nonetheless, the bottom line is, regardless of whether the inevitable-discovery doctrine or the independent-source doctrine applies, the undersigned recommends the Court should not suppress the evidence found pursuant to the NSP warrant.

## II.    Statements.

Timothy spoke to law enforcement on three separate occasions. Timothy asserts violations of his Fifth Amendment *Miranda* rights and his Sixth Amendment right to counsel. He also seeks to suppress the statements as derivative evidence under the Fourth Amendment. For the reasons set forth below, the undersigned recommends the Court deny Timothy's motion to suppress these statements.

### a.  *Fifth Amendment—Miranda Warnings*.

The Fifth Amendment requires officers to *Mirandize* a suspect before engaging in custodial interrogation. *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021). "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* (quoting *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014)). "To determine whether a suspect was in custody, we ask whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *Id.* (quoting *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016)).

In evaluating the totality of the circumstances, the Court considers six non-exhaustive "*Griffin*" factors: "(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest

14

at the termination of the questioning." *United States v. Johnson*, 39 F.4th 1047, 1051 (8th Cir. 2022) (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). Generally, questioning in a suspect's home—i.e., "on [their] own turf"—is "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004).

**Interview with Falls City Police Officers at Timothy's Apartment on July 29, 2022.**

Timothy was not in custody during his initial conversation with Falls City police officers. Timothy initiated contact with law enforcement by calling the Falls City Police Department twice to report information prior to speaking to the officers. The two officers did not enter his apartment, they questioned him while standing outside the door in the hallway of his apartment building. The officers did not tell Timothy they were going to arrest him. Nor did the officers arrest Timothy immediately after the interview. Timothy terminated the interview by refusing to answer any more questions. The officers left to continue questioning other witnesses before returning to Timothy's apartment to arrest him later that day. Each of these facts lends support to the conclusion the first interview with Falls City police was non-custodial. *Cf. Czichray*, 378 F.3d at 825 (suspect not in custody when two FBI agents questioned suspect for seven hours in his living room, escorted him to the bathroom and bedroom, instructed him to call in sick to work, and prevented suspect from answering his phone but did not arrest suspect at the end of the interview and repeatedly informed the suspect the questioning was voluntary/he was free to ask the agents to leave). The Court should not suppress the statements Timothy made to the Falls City officers during this interview.

**Interview with NSP Investigators at Timothy's Apartment on February 27, 2023.**

Since the NSP interview was also conducted at Timothy's apartment, the undersigned addresses the NSP interview next. Timothy was similarly not in custody for most of his interview with NSP investigators.

Two plain clothes NSP investigators knocked on Timothy's door and identified themselves as law enforcement. Timothy agreed to invite the investigators inside his apartment to answer questions. The questioning occurred in the non-coercive environment of Timothy's own living room for approximately ten minutes. The

investigators initially informed Timothy he was not under arrest and did not handcuff him. While the investigators did arrest Timothy at the end of the interview, the undersigned finds this fact is not enough, considering the totality of the circumstances, to transform the pre-*Miranda* encounter into a custodial interrogation. *Cf. United States v. Giboney*, 863 F.3d 1022, 1025, 1027–28 (8th Cir. 2017) (suspect not in custody when six officers executed warrant at suspect's house, woke the suspect up and escorted him to the garage, one officer interviewed suspect in the living room, escorted the suspect to the bathroom and outside to smoke, told suspect he was not free to walk around the house because of the ongoing search, and arrested suspect at end of interview but repeatedly told suspect he was not under arrest and he was free to leave).

After questioning Timothy while he was not in custody for approximately ten minutes, the investigators *Mirandized* him. One of the investigators asked Timothy if he wanted to continue answering questions and Timothy responded, "I can, if you want to ask questions." The investigators then continued questioning Timothy for approximately two more minutes before arresting him. For the reasons stated below and to the extent *Miranda* warnings were required (certainly for any statements Timothy made in response to interrogation after his formal arrest), Timothy waived *Miranda*.

When law enforcement intentionally employs a two-step interrogation to circumvent *Miranda*, the Court looks to the factors outlined by the Supreme Court in *Missouri v. Seibert*, 542 U.S. 600 (2004). *United States v. Torres-Lona*, 491 F.3d 750, 757 (8th Cir. 2007) (adopting Justice Kennedy's concurrence in *Seibert* as controlling). "Where there has been no such calculated effort, the admissibility of a post warning statement should continue to be governed by *Oregon v. Elstad*, 470 U.S. 298 (1985). In *Elstad* the Supreme Court held that a post warning confession is admissible so long as it was knowingly and voluntarily made." *Id.* at 757–58 (internal citation omitted); *see also United States v. Rooney*, 63 F.4th 1160, 1167 (8th Cir. 2023). "The question is whether 'a reasonable person in the suspect's shoes would have understood the *Miranda* warnings as conveying a message that the suspect retained a genuine choice about continuing to talk.'" *United States v. St. John*, No. 8:19CR234, 2019 WL 8225932, at *7 (D. Neb. Dec. 20, 2019), *adopted by* 2020 WL 1248576 (D. Neb. Mar. 16, 2020) (quoting *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005)).

16

The NSP investigators did not intentionally employ a "police strategy adapted to undermine the *Miranda* warnings." *Seibert*, 542 U.S. at 616. As one of the investigators testified, "I can't just show up at somebody's house and just arrest them . . . I did not feel comfortable, because through that conversation there could have been a logical explanation [for the child pornography found on the devices] of, no, that wasn't my device; that was my roommate that had been there, you know, ten months before or whatever." Filing No. 68 at 123:19–24; *see also* Filing No. 68 at 124:2–5. *Cf. Seibert*, 542 U.S. at 605–06 (officer testified he consciously withheld *Miranda* warnings as an interrogation tactic). The undersigned finds any pre-*Miranda* questioning was to see whether an arrest of Timothy was even necessary. Given this finding, the undersigned turns to whether Timothy's waiver was knowing and voluntary.

"The determination of whether a defendant has knowingly and voluntarily waived his *Miranda* rights is an extremely fact sensitive analysis." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010). "There are 'two distinct dimensions' to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. First, the waiver 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' Second, the suspect must have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412 (1986)). The Court looks to the totality of the circumstances, including "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Daniels*, 775 F.3d 1001, 1004–05 (8th Cir. 2014). "A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne." *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006).

There is no evidence the investigators intimidated, coerced, or threatened Timothy. As stated above, the questioning occurred in the inherently non-coercive environment of Timothy's living room. Timothy was 36 when the questioning occurred, *see* Filing No. 7, and there is no indication Timothy is less than average intelligence.

17

Timothy nonetheless argues he did not waive *Miranda* because he responded "I can" when the investigator asked him if he was willing to continue answering questions after *Mirandizing* him. "Waiver of the right to remain silent 'can be clearly inferred from the actions and words of the person interrogated.'" *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016)). "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007).

To the extent Timothy is arguing this statement is an invocation of his right to remain silent, replying "I can, if you want to ask questions," is not an invocation of his rights. *See Ferrer-Montoya*, 483 F.3d at 569 (defendant asking the officer, "What else can I say?" was not an invocation of the right to remain silent). Timothy impliedly waived *Miranda* when he continued answering the investigators' questions after he was *Mirandized*. The investigators' decision to continue asking questions when Timothy responded, "I can," does not make this implied waiver less voluntary.

The Court finds any statements Timothy made after he was *Mirandized* were knowing, voluntary, and intelligent. The Court should not suppress Timothy's statements from the NSP interview.

## Interview at Falls City Police Station on July 29, 2022.

Having addressed the residential interviews, the undersigned will now return to the second Falls City interview at the police station on July 29, 2022. The undersigned concludes Timothy waived *Miranda* before making any statements during this interview.

Falls City officers arrested Timothy at his apartment and transported him to the police station for questioning. There is no evidence the officers intimidated, coerced, or threatened Timothy. Prior to asking any questions, the officers read Timothy the *Miranda* rights and Timothy signed a waiver form—Filing No. 52-4. *See Rooney*, 63 F.4th at 1168 (quoting *United States v. Gallardo*, 495 F.3d 982, 991 (8th Cir. 2007)) (signing a waiver form "carries significant weight in determining whether [the suspect's] waiver was knowing and intelligent"). Notably, the interrogation ended when Timothy invoked his right to an attorney. This indicates Timothy could have ended the interview earlier if he wished but he instead chose to answer the officers' questions. The undersigned finds Timothy's

18

waiver was knowing, voluntary, and intelligent. The Court should not suppress Timothy's statements from this interview.

b. *Fifth Amendment Involuntary Statements.*

"'The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was extracted by threats, violence, or direct or indirect promises, such that [an individual's] will is overborne and his . . . capacity for self-determination critically impaired.' In making the voluntariness determination, courts consider 'the totality of the circumstances,' and assess 'the conduct of law enforcement officials and the suspect's capacity to resist any pressure.'" *United States v. Hudson*, No. 4:22CR3120, 2024 WL 3493715, at *6 (D. Neb. July 22, 2024) (first quoting *United States v. Gipp*, 147 F.3d 680, 683 (8th Cir. 1998); and then quoting *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995)).

Timothy's counsel clarified Timothy was only challenging the voluntariness of the three statements to the extent it related to his *Miranda* arguments. As set forth above, the undersigned finds Timothy voluntarily waived *Miranda* when applicable. Given the ambiguity in Timothy's brief and out of an abundance of caution, the undersigned notes there is no argument or evidence the Falls City police or the NSP investigators threatened, coerced, or intimidated Timothy. Nor is there any argument or evidence Timothy's will was overborne due to his mental state or other characteristics affecting his capacity to resist pressure at the time he made the statements. Timothy's statements were voluntary and should not be suppressed on this basis.

c. *Sixth Amendment Right to Counsel.*

The questioning by the Falls City police and NSP investigators did not violate Timothy's Sixth Amendment right to counsel. The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Edelmann*, 458 F.3d 791, 803 (8th Cir. 2006) (quoting *Texas v. Cobb*, 532 U.S. 162, 166 (2001)); *see also Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 213 (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and

his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.").

The Sixth Amendment is offense specific. *United States v. Bird*, 287 F.3d 709, 714 (8th Cir. 2002). It only attaches to uncharged offenses that are the same, under *Blockburger*, as an offense to which the right attached. *Cobb*, 532 U.S. at 173 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)); *see, e.g.*, *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) (Sixth Amendment did not bar statements defendant made to law enforcement about uncharged murder in eventual murder prosecution even though the right had attached to defendant's pending armed robbery charge in a different case at the time of questioning).

Timothy is charged in this case with one count of possessing and one count of receiving child pornography. The Sixth Amendment attached to both charges when Timothy was indicted on May 16, 2023. Timothy was previously charged in Nebraska state court with two counts of delivering, dispensing, distributing, manufacturing, or possessing a controlled substance to a minor, two counts of contributing to the delinquency of a child, and two counts of procuring and/or selling alcohol to a minor or incompetent person. The Sixth Amendment attached when Timothy first appeared on the state court charges in August 2022.[3]

Timothy was questioned twice by Falls City police on July 29, 2022 (at his apartment and at the police station). Since the questioning took place in July 2022, before the right to counsel attached to either the state (in August 2022) or federal charges (in May 2023), there is no Sixth Amendment violation.

Timothy was also questioned once by NSP investigators at his apartment on February 27, 2023, after the Sixth Amendment attached to the state court offenses. The questioning solely pertained to the then-uncharged child pornography offenses. Accordingly, there is no Sixth Amendment violation with regard to the NSP questioning because (1) the state court offenses are different under *Blockburger* than the federal child

---

[3] The Court takes judicial notice of the Nebraska state court docket at CR 22-175. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (Court "may take judicial notice of judicial opinions and public records").

pornography offenses and (2) the questioning took place in February 2023, before the right attached to the child pornography offenses in May 2023.

Accordingly, the Court should not suppress Timothy's two statements to Falls City police or Timothy's statement to NSP investigators pursuant to the Sixth Amendment.

### d. *Fourth Amendment—Derivative Evidence.*

Generally, absent an exception, the Court should exclude evidence deriving from illegally obtained evidence. *See Wong Sun v. United States*, 371 U.S. 471, 416 (1963). Timothy argues the Court should exclude all his statements as "fruit" of the Falls City and/or NSP warrants. Filing No. 68 at 5:25–6:6. Given the statements to the Falls City officers occurred prior to the first warrant issuing, Timothy's first two statements are not derivative of the warrants. Additionally, as set forth above, the Court should not suppress evidence seized and searched pursuant to either warrant. Accordingly, none of the evidence at issue is tainted by a constitutional violation.

### CONCLUSION

IT IS HEREBY RECOMMENDED to the Honorable Susan M. Bazis, United States District Judge that Defendant's motion to suppress, Filing No. 42, and oral motion for a *Franks* hearing be denied in their entirety.

The Defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

Dated this 12th day of November, 2024.

BY THE COURT:


*s/ Jacqueline M. DeLuca*

United States Magistrate Judge


21